

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

ENTERED
02/14/2019

| | | |
|---|---|---|
| IN RE: § | | |
| THOMAS E. FEREDAY JR.; dba OTEX § | CASE NO: 17-80214 | |
| RESOURCES LLC; dba TEF HOLDINGS, § | | |
| LLC § | | |
|    Debtor(s) § | | |
| § | CHAPTER  7 | |
| § | | |
| CAPACITY FUNDING LLC § | | |
|    Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 17-8017 | |
| § | | |
| THOMAS E. FEREDAY JR. § | | |
|    Defendant(s) § | | |

## **MEMORANDUM OPINION**

On November 6, 2017, the plaintiff, Capacity Funding LLC (hereinafter "Capacity"), initiated this adversary proceeding by filing a complaint objecting to Discharge of Debtor and/or for Nondischargeability of Debt.  On April 5, 2018, the Chapter 7 Trustee filed his intervention objecting to debtor Thomas E. Fereday, Jr.'s (hereinafter "Fereday") homestead exemption claim (ECF No. 27).  A bench trial was held on January 25, 2019.  The Court will enter a separate judgment in this adversary proceeding.  For the reasons so stated, the complaint and intervention are denied.

The parties have stipulated to jurisdiction in the pretrial order.  This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §§ 151, 157, and 1334, as well as the order of reference in bankruptcy cases in the Southern District of Texas. The claims for relief alleged by Plaintiff and Trustee arise under Bankruptcy Code §§ 522, 523, 727, and Bankruptcy Rule 4003.  Accordingly, they are "core" proceedings pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).  Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

Defendant, Thomas E. Fereday, Jr. (hereinafter "Fereday"), was the managing member of Otex Resources, LLC (hereinafter "Otex"). Otex, an oil field production company located at 1810 S. Highway 146, Baytown, Texas 77521, held various mineral rights and its principle source of revenue was oil sales. Between May 2016 and October 2016, Otex entered into four (4) separate agreements, Agreements for the Purchase and Sale of Future Receipts, with Plaintiff Capacity. The purpose of the agreements was for Capacity to provide Otex with operating capital, as Otex had been facing financial difficulty due to falling oil prices and a lack of production caused by flooding along the Trinity River.

Capacity, to secure payment of its obligations, had obtained the defendant's personal guarantee for the corporate liability of Otex and required him to sign confessions of judgment as part of the consideration for the transactions. Each of the four confessions of judgment Fereday signed, in paragraph number two, state that he resides at 111 Poncho, Anahuac, Texas 77514.

On January 31, 2017, Otex filed its Chapter 11 Petition, 17-80033, in the Southern District of Texas, Houston Division, and Fereday executed the schedules[1]. This petition lists Capacity as a creditor in the amount of $445,000 and lists defendant Fereday as a codebtor, with his mailing address as 2408 Bens Branch Drive, Kingwood, Texas 77539. Otex was ultimately unsuccessful in reorganizing. By order dated July 18, 2017, the bankruptcy case of Otex was converted to Chapter 7 (ECF No. 40).

These debts, as well as Fereday's homestead claim for the basis of this adversary proceeding.

In a bankruptcy case, a debtor may use the federal homestead exemption or elect to use

---

[1] The Otex schedules states "I declare under penalty of perjury that the foregoing is true and correct. . . . Executed on 01/31/2017 X/s/Thomas E. Fereday" (ECF No.1, pg 5). The Court notes that the representation of Fereday's mailing address in the Chapter 11 schedules contradicts his testimony that his mailing address had always been 111 Poncho, Anahuac, Texas 77514.

the homestead exemption of his state of domicile. 11 U.S.C. § 522(b). In this case, the Debtor has elected to have his homestead exemption determined by Texas state law. Fereday, since the early 1980's, has owned property as 111 Poncho, Anahuac, Texas 77514. It is uncontroverted that he lived on the property, and it was his real property homestead until 2008, when his home was destroyed by Hurricane Ike. Irrespective of the uncontroverted facts, the property was legally his homestead.

Under Texas law, a homestead claimant must show "both (i) overt acts of homestead usage and (ii) the intention on the part of the owner to claim the land as a homestead." *Kennard v. MBank Waco (In re Kennard)*, 970 F.2d 1455, 1458 (5th Cir. 1992). As to the first prong, using the property as a residence will be sufficient to establish the property "for homestead purposes." *See id.* As to the second prong, actual use of the property is also the "most satisfactory and convincing evidence of intention." *Id.* at 1459. From the early 1980's to its destruction in 2008, 111 Poncho was actually used as the debtor's residence, and it was his homestead.

Between 2008 and 2010 the destroyed structure on the homestead was removed. In 2010, construction of a new home began. The work progressed slowly and remains incomplete. The debtor testified to the following construction timeline: in 2010, concrete piles were constructed[2]; in 2011, the house was framed; in 2012, doors and windows were installed; in 2013, exterior walls were added; in 2014, little or no work was done; and in 2015, outdoor steps were the last structures constructed for the home. The house, however, has never been livable and the debtor has never resided in the reconstructed but incomplete home. It is partially plumbed, has partial electrical and partial ductwork but no water, electricity or air conditioning. It is, in summary, partially complete but totally unlivable.

---

[2] Due to hurricanes, the home sits on concrete piles to avoid storm surge.

The rebuilt property at 111 Poncho is valuable given its location on the coast, and Fereday has listed it for sale twice, first between February 15, 2016 and December 31, 2016 (Ex. 11) for the sum of $2,199,000 and then between January 11, 2017 and June 30, 2017 (Ex. 13) for the sum of $1,500,000. The house, however, has never sold.

The Listing Agreement dated February 10, 2016, signed by Fereday, contains a Seller's Disclosure Notice indicating that the property at 111 Poncho is not seller occupied and that the seller has never occupied the property. As to new construction at 111 Poncho, this is true. After Hurricane Ike, Fereday's home at 111 Poncho was substantially destroyed and, as previously stated, the rebuilt house has never been habitable.

On July 12, 2017, Fereday filed a personal Chapter 7 bankruptcy, 17-80214. He listed his mailing address as 111 Poncho, Anahuac, Texas 77514 (ECF No. 2, pg 2). On July 26, 2017, he valued the at $678,960 and claimed it as exempt pursuant to Texas Constitution, article XVI, 50, 51 and Texas Property Code sections 41.001–.002 (ECF No. 13, pg 10). No objection to the claim of his homestead exemption was made until the Chapter 7 intervenors complain on April 5, 2018.

In the complaint, Trustee alleges that the debtor has fraudulently claimed a homestead exemption in the property known as 111 Poncho Street, Anahuac, Texas and that his homestead exemption should be denied. Bankruptcy Rule 4003(b) provides that a "trustee may file an objection to a claim of exemption at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim of exemption." Fereday's bankruptcy case has yet to close.

Plaintiff and Trustee assert that Debtor's homestead at 111 Poncho is not his homestead because he has abandoned it, and even if he has not abandoned it, he is estopped from claiming

111 Poncho as his homestead because of his oral and written representations that it is not and will not be claimed as his homestead. Homesteads have been recognized as favorites of Texas law, and a court must give liberal construction to the constitutional and statutory provisions that protect homestead exemptions. *See Border v. McDaniel (In re McDaniel II)*, 70 F.3d 841, 843 (5th Cir. 1995).

On December 27, 2016, Fereday signed a Deed of Trust, Security Agreement and Fixture Filing; Secured Promissory Note; and Forbearance Agreement with Capacity (Ex. 8). The Deed of Trust, Security Agreement and Fixture Filing, which included the real property at 111 Poncho, states:

> "Declaration of No Homestead: Grantor herein represents, warrants, acknowledges and confirms that none of the real property pledge hereunder is or will be subject to a claim of homestead rights by Grantor, that he irrevocably waives the right to declare any of the property pledged hereunder as his homestead, and that beneficiary is detrimentally relying on his representations and warranties in executing the Forbearance Agreement and this Deed of Trust."

Fereday signed the Deed of Trust, Security Agreement and Fixture Filing and forwarded a copy of the signed document to Capacity. However, he never returned the original to Capacity and it was, therefore, not recorded.

When Fereday filed his personal bankruptcy petition, he answered question 5 of the petition as follows:

> "Where you live"
> Answer: "111 Poncho Street, Anahuac, TX 77514"

The debtor did not live[3] at 111 Poncho Street on his of July 12, 2017. He had, by his own admission, not lived at 111 Poncho Street since 2008, and there was not a habitable structure on this property for him to live in, in any event. His testimony of why he listed this address was

---

[3] The Court, for purposes of the bankruptcy petition, defines "live" as the place you occupy as a home, i.e. where you dwell, inhabit or stay.

5 / 16

unconvincing and the Court considers Fereday to be an unreliable witness. However, since 2008 the debtor has lived in other homes but he has never made any other declaration or claim of homestead, except as to 111 Poncho Street.

Additionally, Fereday's Chapter 7 petition further states at question 5, "If your mailing address is different from the one above, fill it in here." Fereday did not provide a different mailing address. This is another false statement. As previously noted, Fereday's mailing address by his own admission was 2408 Bens Branch Drive, Kingwood, Texas 77539, on January 31, 2017, the date of the Otex bankruptcy petition. Additionally, Fereday's testimony was that on the filing date of his petition, he was sleeping at 930 Aqua Drive, Kingwood, Texas and that over the last seven years, he has lived with his wife in five different rental units located on Bens Branch Drive, Kingwood, Texas 77539. His falsehoods continue in the Statement of Financial Affairs (ECF No. 13), where he responds at question 2, "During the last three years, have you lived anywhere other than where you live now?" Answer "No." Here, Fereday omits all the addresses in which he has resided in the last three years. The Court, therefore, concludes that Fereday was attempting, via these multiple false representations, to mislead the Trustee regarding his residence at the time he filed his Chapter 7 petition to buttress his homestead claim. However, for the reasons later described, these attempts to mislead were unnecessary.

<u>The Trustee's Objection</u>

This Court must determine first if the defendant fraudulently asserted his claim of exemption. Absent a fraudulent claim of exemptions, the time for objecting to exemptions pursuant to Bankruptcy Rule 4003(b)(1) is 30 days after the meeting of the creditors. A date which passed prior to the filing of the Trustee's intervention in this adversary proceeding. If the defendant's claim is not fraudulently based, then the exemptions have been allowed and the

property is exempt whether the claim is proper or not. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 650–51 (U.S. 1992) (acknowledging that had trustee filed a timely objection, there was no statutory basis permitting debtor's claimed exemption).

The Trustee's objection is not timely because there was no fraud in Fereday's homestead claim as it was in fact his homestead under Texas law. "The threshold requirement concerning exemptions, imposed by 11 U.S.C. § 552(l), is a timely objection by a party in interest. Fed. R. Bankr. P. 4003(b) sets forth a thirty-day deadline to file objections. If a party in interest files a timely objection, then the bankruptcy court decides if the claimed exemption fits into one of the categories listed in 11 U.S.C. § 522." *In re Carlew*, 469 B.R. 666, 673 n.10 (Bankr. S.D. Tex. 2012), aff'd sub nom. *West v. Carlew*, No. BR 11-37886-H4, 2012 WL 3002197 (Bankr. S.D. Tex. 2012) (internal citations omitted).

The Trustee's objection is based on Federal Rule of Bankruptcy Procedure 4003(b), which extends his time to object if the defendant fraudulently asserted a claim of exemption. Here, the Court finds a fraudulent claim of exemption did not exist because 111 Poncho qualifies as Fereday's homestead under Texas law. The Trustee had the burden to prove that Fereday had abandoned the homestead but failed to meet that burden.

Fereday's homestead is presumed to endure. "Once property has been dedicated as homestead, it can only lose such designation by abandonment, alienation, or death. After the party has established the homestead character of the property, the burden shifts to the creditor . . . to disprove the continued existence of the homestead. In other words, a homestead is presumed to exist until its termination is proved." *Wilcox v. Marriott*, 103 S.W.3d 469, 472 (Tex. App.—San Antonio 2003, pet. denied) (internal citations omitted).

Abandonment may not be presumed merely from a change in the owner's residence.

"Abandonment of a homestead occurs when the homestead claimant ceases to use the property and intends not to use it as a home again." *Churchill v. Mayo*, 224 S.W.3d 340, 345 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). "[A]nyone asserting abandonment [of a homestead] has the burden of proving it by competent evidence." *Caulley v. Caulley*, 806 S.W.2d 795, 797 (Tex. 1991). An attempt to convey property is insufficient proof of abandonment. *See Matter of Moody*, 862 F.2d 1194, 1200 (5th Cir. 1989). Additionally, a contractual waiver of exemption in favor of a creditor that holds an unsecure claim is unenforceable against the debtor. 11 U.S.C. § 522(e); *Davis v. Davis (In re Davis)*, 170 F.3d 475, 478 (5th Cir. 1999) ("The right to claim exemptions is closely guarded. Waivers are unenforceable."). This Court finds the debtor never intended to abandon his homestead, never established a new homestead and that 111 Poncho has been and continues to be the debtor's homestead.

The debtor's petition was filed on July 12, 2017 and the Trustee did not object until April 5, 2018, well beyond the 30-day timeline. Accordingly, the Trustee's objection is overruled.

<u>Capacity's Claims</u>

Capacity has additionally made a laundry list of claims under 11 U.S.C. § 727 and 11 U.S.C. § 523, some of which have little connection with or relationship to the facts of the case. "[T]he issue of nondischargeability [is] a matter of federal law governed by the terms of the Bankruptcy Code." *Grogan v. Garner*, 498 U.S. 279, 284 (1991). Nondischargeability must be proven by a preponderance of the evidence. *Id.* at 287. "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).

However, the Bankruptcy Code limits this fresh start to "the honest but unfortunate debtor." *Countrywide Home Loans Inc. v. Cowin (In re Cowin)*, 864 F.3d 344, 349 (5th Cir. 2017) (internal citations omitted). Nevertheless, in *Law v. Siegel*, the Supreme Court stated "§ 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate," discouraging courts from reading equitable exceptions into the code, which this Court concludes includes this Court's questioning of Fereday's truth and veracity as a witness. *Law v. Siegel*, 571 U.S. 415, 423 (2014).

Capacity's first claim is under 11 U.S.C. § 727(a)(2)(A). This section creates an exception to discharge where "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition." To successfully object to a discharge under § 727(a)(2)(A), a creditor must establish the following four elements: (1) a transfer or concealment of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; and (4) with the intent to hinder, delay, or defraud a creditor or officer of the estate. *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 565 (5th Cir. 2005) (citing *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989)). The intent to defraud must be actual, not constructive. *In re Chastant* at 91. But actual intent may be inferred from the debtor's actions and may be proven by circumstantial evidence. *In re Pratt* at 565.

Here, Capacity has failed to meet its burden. There is no evidence that the Fereday has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor. While there were viable

allegations regarding the debtor's truthfulness and the omission of an asset from his schedules, none of Capacity's claims include any evidence that the debtor transferred, removed, destroyed, mutilated, or concealed property of the debtor within the last year. Accordingly, this claim for relief is denied.

Capacity's second claim is under 11 U.S.C. § 727(a)(4)(A), the exception to the debtor's discharge where "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." To successfully object to a discharge under § 727(a)(4)(A), a creditor must establish the following five elements: (1) [the debtor] made a statement under oath; (2) the statement was false; (3) [the debtor] knew the statement was false; (4) [the debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Pratt* at 566. "An omission of an asset can constitute a false oath." *Id.* "In determining whether or not an omission is material under 11 U.S.C.S. § 727(a)(4)(A), the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors. The subject matter of a false oath is "material" and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Id.* at 566–67.

Here, Capacity's claims are more well-grounded. The defendant has made the following false statements, under oath, in his schedules and statement of financial affairs:

a. Question: "Where you live"
   Answer: "111 Poncho Street, Anahuac, TX 77514"

b. Question: "If your mailing address is different from the one above, fill it in here"
   Answer: There was no response.

c. Question: "During the last three years, have you lived anywhere other than where you live now?"
   Answer: "No."

The Court, however, finds these false statements and omissions not material. The Court has previously held that Fereday was attempting, via these multiple false representations in his schedules, to mislead the Trustee regarding his residence at the time he filed his Chapter 7 petition to buttress his homestead claim. Irrespective of these falsehoods, the Court additionally found that the property that Fereday sought to claim as a homestead was actually his homestead. Therefore, these misrepresentations are clearly immaterial as they did not affect the Court's analysis of his homestead claim. Whether or not Fereday had made the representations in his schedules and also in his first meeting of creditor testimony[4] the Court would have reached the same conclusion that 111 Poncho was his homestead.

Additionally, the debtor omitted and still omits a remainder interest in real property from his bankruptcy schedules at 199 Poncho. On September 2, 2014 an Agreed Judgement of Partial Distribution of the Estate of Joyce Ellen Fereday, Deceased was entered in the 344th Judicial District Court of Chambers County, Texas (Ex. 32). It granted a life estate to Gerald Wayne "Red" Davis (hereinafter "Davis") and a remainder interest to Fereday in 199 Poncho. Thereafter, Fereday, on August 29, 2014, as the surviving spouse of Joyce Ellen Fereday executed a Life Estate Deed to Davis. The testimony is clear that this remainder interest was omitted from the debtor's schedules. In addition, the defendant has not amended his schedules to reflect this interest and the asset remains unscheduled in the debtor's bankruptcy case. While the debtor offered no explanation of the omission of the remainder interest from the schedules, the plaintiff was likewise silent and offered no evidence as to whether the omission of the remainder interest from the schedules was made with fraudulent intent or in any way material. The Court does note that the Chapter 7 Trustee has not attempted to administer the remainder interest in the

---

[4] (ECF No. 95, pg 7, line 23) Question by Trustee: "Okay, how long have you owned your home?" Answer: "I've lived there since 1984."

main bankruptcy case. The Court places the burden of proof on the plaintiff and, based on this lack of evidence, cannot find that this omission was made with fraudulent intent or that it is material. Without this finding there are no grounds for denial of the debtor's discharge. Accordingly, this claim for relief is denied.

Capacity's third and fourth claims are under 11 U.S.C. §§ 523(a)(2)(A) & 523(a)(2)(B), respectively. In its third claim, Capacity contends the defendant obtained money from it by false pretenses, false representations and actual fraud, amounting to theft and resulting in harm. In its fourth claim, Capacity seeks an exception to discharge based on defendant's alleged written false statements regarding his and/or Otex's financial condition that induced it to extend credit to the defendant. Because these claims are so closely related, the Court will address them together.

In order for a creditor to demonstrate that a claim is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) for actual fraud, a plaintiff must demonstrate by a preponderance of the evidence that "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations." *Selenberg v. Bates (In re Selenberg)*, 856 F.3d 393, 398 (5th Cir. 2017). With respect to a false representation, the Fifth Circuit and others "have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation actionable under section 523(a)(2)(A)." *Id.* at 399. "When one has a duty to speak, both concealment and silence can constitute fraudulent misrepresentation; an overt act is not required. Moreover, a misrepresentation need not be spoken, it can be made through conduct." *AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 404 (5th Cir. 2001).

Section 523(a)(2)(B) states as follows:

(a) A discharge under 727 . . . of this title does not discharge an individual debtor from any debt—

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

. . .

    (B) use of a statement in writing—

        (i) that is materially false;

        (ii) respecting the debtor's or an insider's financial condition;

        (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

        (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B). The existence of these elements is a question of fact, which the creditor must prove by a preponderance of the evidence. *Norris v. First Nat'l Bank (In re Norris)*, 70 F.3d 27, 29 (5th Cir. 1995). The relevant "intent to deceive may be inferred from use of a false financial statement." *Young v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa (In re Young)*, 995 F.2d 547, 549 (5th Cir. 1993).

In summary, "[s]ection 523(a)(2)(A) generally renders debt obtained by false pretenses, false representations, or actual fraud non-dischargeable. But it contains an exception: if the debt is obtained by a false oral statement respecting financial condition, then it is dischargeable. In contrast, a false written statement respecting financial condition is non-dischargeable under § 523(a)(2)(B), provided that the other conditions in this subsection are met." *Haler v. Boyington Capital Grp LLC (In re Haler)*, 708 F. App'x 836, 839–40 (5th Cir. 2017).

Here, Capacity has failed to meet either burden with respect to both sections 523(a)(2)(A) and 523(a)(2)(B). There was little to no evidence that false representations were made by Otex

or Fereday in order to obtain operating capital. There were four separate Agreements for the Purchase and Sale of Future Receipts that were dated May 4, 2016, June 10, 2016, July 7, 2016, and October 28, 2016 that Fereday personally guaranteed. Perhaps Fereday made a false representation when he stated in the confessions of judgment that he resided at 111 Poncho, but there is no evidence regarding the materiality of such a statement and no evidence of reliance. Further, Fereday's representation in the confessions of judgment that he resided at 111 Poncho should have put Capacity on notice of Fereday's homestead claim. Fereday did not make any false representations to deceive the creditor into entering into the agreements and advancing the funds. If Fereday made any false representations to deceive, they occurred after his original personal guarantee was executed and after the bankruptcy filing of Otex, long after funds had been advanced by Capacity to Otex. Any potentially false claims made by Fereday, whether oral or written, were made during the collection process of his personal guarantee and not when the debt was incurred. The damage to Capacity, in making agreements that ended up being uncollectable, occurred when the agreements were incurred and not during the collection process when any potential misrepresentations occurred.

Further, Fereday's misrepresentations, if any occurred, were not statements regarding his financial condition. Fereday was, by the testimony of the principle of Capacity, knowledgeable in his business field. He was seeking operating capital for his small oil field production company. While any predictions of future revenue may have turned out to be overstated, they were based on Fereday's business knowledge, not made with intent to deceive. Likewise, such statements were not materially false and did not affect Capacity's business decision to lend. The Court has made a factual determination whereby the court looks to the totality of the circumstances to make this assessment. Accordingly, this claim for relief is denied.

Capacity's fifth claim is under 11 U.S.C. § 523(a)(4), an exception to discharge for a debt due to fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Specifically, Capacity alleges Fereday committed fraud, defalcation, embezzlement and larceny while acting in a fiduciary capacity to it, within the meaning of section 523(a)(4), because Fereday was a managing member of Otex owning ninety-eight percent of the membership interest. The term "fiduciary" in the context of section 523(a)(4) is construed narrowly, limited to "technical trusts" and to traditional fiduciary relationships involving "trust-type" obligations imposed by statute or common law. *B & W Fin. Co. v. Harwood (In re Harwood)*, 637 F.3d 615, 619–20 (5th Cir. 2011). "The scope of the concept of fiduciary under [Section 523(a)(4)] is a question of federal law; however, state law is important in determining whether or not a trust obligation exists." *Id.* at 620 (internal citations omitted). There is no evidence on the record indicating a fiduciary relationship between Fereday and Capacity. His position as managing member of and ninety-eight percent ownership interest in Otex likely establishes his fiduciary relationship with Otex, not Capacity. *See LSP Inv. P'ship v. Bennett (In re Bennett)*, 989 F.2d 779, 790 (5th Cir. 1993). Accordingly, this claim for relief is denied.

Capacity's last claim is under 11 U.S.C. § 523(a)(6), an exception to discharge for a debt due to willful and malicious injury by the debtor to another entity or to the property of another entity. Section 523(a)(6) requires a showing that the debtor intended to harm the plaintiff. *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998) (holding that debt arising from medical malpractice judgment, attributable to physician's negligent or reckless conduct, did not fall within willful and malicious injury exception to discharge). "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to

15 / 16

exempt debts resulting from unintentionally inflicted injuries, it might have described instead 'willful acts that cause injury.' Or, Congress might have selected an additional word or words, *i.e.*, 'reckless' or 'negligent,' to modify 'injury.'" *Id.* at 61. Here, there is no evidence that any of the acts of Fereday fall within this exception to discharge. Accordingly, this claim for relief is denied.

    **IT IS THEREFORE ORDERED** that the complaint of Capacity is in all things denied.

    **IT IS FURTHER ORDERED** that the debtor be discharged.

SIGNED: 02/14/2019.

_____
Jeffrey P. Norman
United States Bankruptcy Judge